1  LUCAS VALLEY LAW
   MARK K. de LANGIS (SBN 190083)
2  mdelangis@lucasvalleylaw.com
   2110 Elderberry Lane
3  San Rafael, California  94903
   Telephone:  (415) 472-3892
4
   Attorneys for Plaintiffs
5  APL Co. Pte Ltd and
   American President Lines Ltd.
6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 APL Co. Pte Ltd, a corporation, and          No. 2:16-cv-2373
   AMERICAN PRESIDENT LINES LTD.,
12 a corporation,
                                                COMPLAINT FOR
13              Plaintiffs,
                                                1. BREACH OF MARITIME
14      v.                                         CONTRACT;
                                                2. OPEN ACCOUNT;
15 DRAFT CARGOWAYS INDIA                         3. COMMON COUNT FOR
   PRIVATE LIMITED, a corporation,                  SERVICES PERFORMED
16
                Defendant.
17

18

19

20      Plaintiffs APL Co. Pte Ltd and American President Lines Ltd.  (collectively

21 "APL") complain against defendant Draft Cargoways India Private Limited and

22 allege as follows:

23                      **JURISDICTION AND VENUE**

24

25      1.      The following claims are admiralty and maritime claims within the

26 meaning of Rule 9(h) of the Federal Rules of Civil Procedure and fall within the

27 admiralty jurisdiction of this Court under 28 U.S.C. §1333.

28

1   2.  Venue is proper in the Central District of California because part of

2 defendant's cargo which was transported by APL (and is the subject of this

3 lawsuit) was loaded on board APL's ocean going vessels at the Ports of San Pedro

4 and Los Angeles, located within this district.

5

6          **PARTIES**

7

8   3.  Plaintiff APL Co. Pte Ltd is, and all relevant times was, a corporation

9 duly organized and existing under the laws of Singapore, registered to do business

10 in the State of California.

11   4.  Plaintiff American President Lines Ltd. is, and at all relevant times

12 was, a corporation duly organized and existing under the laws of the State of

13 Delaware, registered to do business in the State of California.

14   5.  APL is informed and believes, and on that basis alleges that defendant

15 Draft Cargoways India Private Limited is, and at all relevant times was, a

16 corporation duly organized and existing under the laws of  India, licensed as a

17 Non-Vessel Operating Carrier by the Federal Maritime Commission.

18

19       **GENERAL ALLEGATIONS**

20

21   6.  At all relevant times, APL was and still is an ocean carrier of goods

22 for hire between, *inter alia*, the United States and foreign ports.

23   7.  On or about March 2014 through May 2015, Draft Cargoways India

24 Private Limited ("Draft") acted as the Non Vessel Operating Carrier ("NVOCC")

25 for various shipments of cargo between the United States and foreign ports.  Draft

26 and APL memorialized shipments of Draft's principal's cargo in twenty-four (24)

27 bills of lading.

28

1    8.    APL, as "Carrier," issued those 24 bills of ladings for all of Draft's

2    shipments.  For the 24 bills of lading, Draft was listed as the "Shipper," and acted

3    as the NVOCC for its principal.

4    9.    Draft's shipments were received by APL in various locations within

5    the United States and were loaded on board vessels owned, operated, or contracted

6    for by APL ("APL vessels").

7    10.    All of Draft's cargo timely arrived at its destination and was unloaded

8    from the APL vessels in foreign ports as so designated by Draft.

9    11.    Clause 1 of APL's bill of lading defines "Merchant" to include "the

10    Shipper, Consignee, Receiver, Holder of the Bill of Lading, Owner of the cargo or

11    Person entitled to the possession of the cargo or having a present or future interest

12    in the Goods and the servants and agents of any of these," and states that "all . . .

13    shall be jointly and severally liable to the Carrier . . . for the performance of the

14    obligations . . . under this Bill of Lading."

15    12.    Draft was, at some point before, at, or after tender of the cargo to APL

16    for carriage, one or more of the following: (a) shipper; (b) consignee; (c) receiver;

17    (d) holder of the bill of lading; (e) owner of the cargo (f) person entitled to

18    possession; (g) holder of a present or future interest in the Goods; or (h) a servant

19    or agent of (a)-(g).

20    13.    Draft is a "Merchant" under the bills of lading.

21    14.    For eleven (11) bills of lading, tendered to APL between July 27,

22    2014 and August 4, 2014, Draft loaded, on behalf of its principal, southern yellow

23    pine logs into 125 ocean going cargo containers.  Those 125 containers used for

24    transporting Draft's cargo are owned by APL and were supplied to Draft by APL,

25    at Draft's request.  These were "Shipper-Packed Containers" under Clause 9 of

26    APL's bill of lading.

27

28

1    15.    Clause 9 of APL's bill of lading "Shipper-Packed  Containers" states

2 that "[i]f a Container has not been filled, packed, stuffed or loaded by the Carrier,

3 the Carrier shall not be liable for loss of or damage to the Goods and the Merchant

4 shall indemnify the Carrier against any loss, damage, liability or expense incurred

5 by the Carrier."  The containers at issue herein were "Shipper-Packed," and were

6 "stuffed" by Draft, its principal and/or their agents.

7    16.    Of  Draft's 125 containers of southern yellow pine logs, about one

8 half were off- loaded in Hong Kong per Draft's request.  Subsequently, Draft

9 requested that those containers be re-routed to Yantian, China, the location that the

10 other containers of southern yellow pine logs were discharged.  Ultimately, all 125

11 containers ended up in the Yantian Terminal Container Yard.

12    17.    Draft's consignee failed to pick up Draft's cargo and the containers

13 sat in the terminal at Yantian while Draft and its principals sought a buyer.

14 Eventually, Draft abandoned the cargo.  Consequently, Yantian Customs started

15 the process of auctioning off the logs.  When no buyer stepped forth at the first

16 auction, Yantian Customs was forced to hold a second auction to sell off the

17 southern yellow pine logs.

18    18.    As per the contract regarding the aforementioned shipments, the

19 parties' relationship was governed by the terms detailed in the bills of lading.

20 Furthermore, APL's applicable tariffs were incorporated into the bills of lading.

21 The bills of lading specifically draw attention to APL's tariffs concerning container

22 demurrage at Clause 2: "The terms of the Carrier's Applicable Tariff are

23 incorporated herein. Particular attention is drawn to the terms therein relating to

24 Container . . .  demurrage."  As a result of Draft's failure to have the containers

25 picked up, unloaded, and returned to APL, the 125 containers of southern yellow

26 pine accrued $4,557,858.68 in demurrage charges per APL's tariff.

27

28

1    19.    For the containers that first went to Hong Kong, before ending up in

2    Yantian, the Hong Kong International Terminal charged APL $18,000 in storage

3    fees for the time those containers sat at the Hong Kong yard.  APL paid those

4    storage fees for Draft's account, with purchase order number 7260060274, in

5    October 2014.

6    20.    In Clause 13 of the bills of lading, Draft agreed to indemnify APL and

7    to "comply with all regulations or requirements of <u>customs, port</u> and other

8    authorities, and . . . pay all . . . expenses or losses . . . incurred or suffered . . . and

9    [Draft] shall indemnify the Carrier in respect of any such failure to comply. . . ."

10    (emphasis added.)

11    21.    Draft breached Clauses 13 and 19 of the bills of lading and is liable

12    for APL's damages and expenses.  Draft is obligated to pay APL's damages as a

13    result of the indemnity obligations it undertook in the bill of lading contracts with

14    APL.

15    22.    Yantian International Container Terminals Limited charged APL

16    $183,750 for storing the 125 containers at the Yantian yard, awaiting pick up by

17    Draft's consignee/buyer, and for thereafter sitting and waiting for the logs to be

18    auctioned off.  APL paid the $183,750 on behalf of Draft and for Draft's account.

19    Yantian customs also charged APL (for Draft's account) $31,673 for inspecting,

20    fumigating, and preparing the pine logs for auction.  APL paid the $31,673 on

21    behalf of Draft and for Draft's account.

22    23.    Finally, as to all 24 bills of lading, Draft failed to pay all of the ocean

23    freight and other transportation related charges for those shipments.  All tolled,

24    Draft owes APL $279,010.16 in ocean freight and other transportation related

25    charges for cargo that Draft contracted with APL to carry for Draft and its

26    principals.

27    24.    Despite demands by APL, Draft has failed to pay APL the above

28    described charges associated with carriage of Draft's cargo.  Accordingly, there is

21407289.1/06647-0241

1  due and owing to APL, from Draft, the amount of $5,070,291.84 exclusive of

2  interest in connection with the above-described shipments.

3

4  **FIRST CAUSE OF ACTION**

5  **(Breach of Maritime Contract)**

6       25.    APL refers to, and by that reference incorporates as if fully set forth

7  herein, each and every allegation set forth in paragraphs 1 through 24, inclusive,

8  hereinabove.

9       26.    Pursuant to the terms of the bills of lading (including Clauses 9 and

10  13) and APL's tariffs incorporated by reference, which governed the parties'

11  relationship, Draft expressly agreed to pay the ocean freight, demurrage charges

12  for late return of APL's containers, all transportation related charges, and any other

13  associated expenses or losses related to APL's carriage of Draft's cargo.

14       27.    APL has performed all of its obligations under the bills of lading

15  contracts between the parties.

16       28.    Draft materially breached the terms of the bills of lading contracts

17  entered into between the parties by failing to pay the ocean freight, demurrage,

18  transportation related charges, port and terminal storage fees, and other associated

19  expenses and losses as promised.

20       29.    As a direct and proximate cause of Draft's breach of the bills of lading

21  contracts by failing to pay the ocean freight, demurrage, disposal charges,

22  transportation related charges, port and terminal storage fees, and other associated

23  charges owing, APL has suffered damages in the amount of $5,070,291.84

24  (excluding interest).

25

26

27

28

1    **SECOND CAUSE OF ACTION**

2    **(Open Account)**

3        30.    APL refers to, and by that reference incorporates as if fully set forth

4    herein, each and every allegation set forth in paragraphs 1 through 29, inclusive,

5    hereinabove.

6        31.    Draft owes APL the sum of $5,070,291.84 that is due with interest in

7    accordance with the terms of APL's bills of lading contracts and applicable tariffs,

8    more fully described above.

9        32.    APL has made demand for payment upon Draft and Draft has

10   acknowledged receipt of said demand.

11       33.    Draft has refused to pay and continues to refuse to pay the outstanding

12   sums due and owing.

13

14   **THIRD CAUSE OF ACTION**

15   **(Common Count- Services Performed)**

16

17       34.    APL refers to, and by that reference incorporates as if fully set forth

18   herein, each and every allegation set forth in paragraphs 1 through 33, inclusive,

19   hereinabove.

20       35.    Draft is indebted to APL for the amount of $5,070,291.84, for the

21   services APL performed at Draft's request, *i.e.* allowing Draft to use APL's

22   containers for transporting Draft's cargo, and shipping that cargo from the United

23   State to foreign ports.

24       36.    Draft has paid nothing towards its $5,070,291.84 debt, therefore, APL

25   is entitled to recover $5,070,291.84, excluding interest, for services performed for

26   Draft.

27

28

## **PRAYER FOR RELIEF**

1

2    WHEREFORE, Plaintiffs APL Co. Pte Ltd and American President

3 Lines Ltd. pray as follows:

4    1. The Court enter judgment in APL's favor and against Draft

5       Cargoways India Private Limited for $5,070,291.84, the full

6       amount of APL's claim against Draft Cargoways India Private

7       Limited;

8    2. The Court award APL prejudgment interest on all sums as

9       provided by law;

10    3. The Court award APL its costs of suit;

11    4. The Court award APL its attorneys' fees;

12    5. The Court award APL such other and further relief as the Court

13       may deem proper.

14

15

16 DATED:  April 7, 2016

17

18                                    LUCAS VALLEY LAW

19

20                        By:/s/ Mark K. de Langis
21                              Mark K. de Langis
                               Attorneys for Plaintiffs
22                             APL CO. Pte Ltd and
                          AMERICAN PRESIDENT LINES LTD.

23

24

25

26

27

28

COMPLAINT

8